UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-80162-CR-CANNON

UNITED STATES OF AMERICA

vs.

JOSEPH ROBERT STEWART,

Defendant.
_____/

## FACTUAL PROFFER

The United States of America and Joseph Robert Stewart ("Defendant" or "STEWART") agree that if this case had gone to trial, the United States would have proven the following facts beyond a reasonable doubt:

1.  At all relevant times, "Website A" was a website dedicated to the advertisement and distribution of child pornography, as defined in 18 U.S.C. § 2256(8)(A), and the discussion of child sexual abuse. Users of Website A could engage in online communications with other users. Users trafficked in child pornography via Website A by posting web links within messages. These links redirected to other websites, such as file-hosting websites, where the linked-to child pornography images and videos were available for download and/or viewing. Under the rules of Website A, the links were required to contain descriptive text that provided information about the sexual acts and age and gender of the child victim depicted in the linked-to child pornography files. During the timeframe relevant to this matter, Website A users made tens or hundreds of thousands of child pornography images and videos available in this manner. At all relevant times, Website A was managed by particular users referred to as "staff" and it had at least 100 registered members. Website A stopped functioning in its original form in approximately November 2022.

2. STEWART was an active member of Website A from at least October 2020 until it ceased operating in November 2022, during which time he obtained a position of leadership through his contributions to the site. In his leadership capacity, STEWART attended staff meetings with other high-ranking members of Website A, and was responsible for moderating, among other things, the publicly available chat room on Website A. He moderated this room by posting rules and advice for other Website A users to follow, including about how users should post and categorize child pornography links and how newer users could attain greater status on the site by sharing child pornography links with other users. He also reprimanded or muted users who failed to follow these rules. For example, on or about March 23, 2021, STEWART posted "*Agreed. Extreme needs to be listed. and look at the extreme format :)*," in response to a user's incorrect labeling of a post. According to the rules of the TARGET WEBSITE, "extreme" content—such as images or videos depicting torture, rape, or children screaming or crying—needed to be clearly marked as "extreme."

3. Website A also contained an exclusive room that consisted of thousands of links to child pornography files and no chat messages. Because this room contained such a wealth of child pornography, access to it was very desirable for rank-and-file Website A users. Before Website A staff would consider allowing a user to access this room, that user needed to share a large volume of child pornography over the website and continue doing so the entire time they had access to it. Before being granted access, users would have to fill out a formal agreement indicating that they have read and agree to an extensive list of rules, including that they must regularly post child pornography in the room. STEWART participated in the management and improvement of this room, regularly interacting with the highest-ranking members of Website A in the process. For example, STEWART archived postings in this room to ensure that the links

users posted continued working after they were shared, manually checked the links in this room to confirm that they worked, maintained a copy of multiple years of posts from this room, and scouted Website A for other users who he believed were worthy of an invitation to the room due to their contributions to the site.

4. STEWART also posted child pornography to Website A, including depictions of children engaged in sexual acts with adults. He did so by posting URL links in rooms that included or were accessible by 10 or more other users. For example:

   a. On or about December 4, 2021, STEWART posted a link that he tagged "[preteen]," "[girl]," and "[showing]," and the comment "*Changing clothes at a park.*" The link redirected to another website that contained a more-than-four-minute-long video that depicted multiple prepubescent girls, estimated to be between five and nine years of age, changing into bathing suits in a park. The individual recording them appears to be clandestinely recording them without their knowledge. In multiple instances, the camera focuses and zooms in on the girl's exposed vaginas for significant periods of time. All the girls have young facial and bodily features as well as no noticeable breast development or pubic hair.

   b. On or about December 4, 2021, STEWART posted a link tagged "[various ages]," "[girl]," and "[showing]," and the comment "*13yo and 5yo Buying Shoes.*" The link redirected to another website that contained an almost-three-minute-long video depicting two prepubescent females in what appears to be a shoe store, trying on shoes. The individual recording them appears to be clandestinely recording them without their knowledge. In multiple instances, the camera focuses on the girl's genital areas when they are sitting with their legs spread. In one of those instances, one of the girls who is estimated to be between three and five years of age sits on the ground with her legs spread while not wearing any underwear. The camera zooms

3

in and focuses on the girl's exposed anus and vagina.

  c. On or about September 7, 2022, STEWART posted a link tagged "[preteen]," "[girl]," and "[fuck]," and the comment "*Because of a new phone, this Chinese preteen gave her pussy and ass for it.*" The link redirected to another website that contained a video that is more than 23 minutes long and depicts a prepubescent female estimated to be between five and seven years of age engaging in anal and vaginal sexual intercourse with an adult man. The girl has young facial and bodily features as well as no noticeable breast development or pubic hair.

  5. Until approximately July 2022, and during the time when STEWART engaged in the conduct on Website A described above, another high-ranking administrator of Website A resided in Palm Beach County, Florida, within the Southern District of Florida, where he advertised and distributed child pornography and took acts to help manage Website A from his home.

  6. Further, beginning on an unknown date and continuing until the date of his arrest on or about August 15, 2023, STEWART possessed multiple electronic devices in his residence in the Western District of Washington that he used to engage in the above and related conduct and/or that contained child pornography. Together, these devices contained thousands of images and videos depicting minors engaged in sexually explicit conduct, as well as evidence that STEWART used encryption technology. The images and videos STEWART possessed included depictions of the sexual abuse of infants and toddlers ~~and depictions of child sexual abuse involving violence, bondage, and sadomasochistic abuse~~. STEWART agrees that the following devices are subject to forfeiture:

[handwritten: WGC RDF fR]

  a. One white Apple iPhone (S/N: F2LFF0960D40);

  b. One iPad Pro (S/N: PSQKKXYNHR);

      c. One HP Server, Model DL380-07 (S/N: 1LWCR10A861F0PQ);

      d. One Synology Storage Array (S/N: 1780PHN061014); and

      e. One White WD My Cloud External HD (S/N: WCC4E3LXY4PK).

7. Based on these facts and other information known to the parties, STEWART agrees that, had this case gone to trial, the government would have proven beyond a reasonable doubt, as to Count 2 of the Indictment, that STEWART conspired to advertise child pornography in violation of Title 18, United States Code, Section 2251(d) and (e), beginning in or around October 2020 and continuing through on or about November 14, 2022, such that:

    a. two or more persons in some way agreed to try to accomplish a shared and unlawful plan;

    b. the Defendant knew the unlawful purpose of the plan and willfully joined in it.

And that the unlawful purpose of the plan was to commit the offense of advertising child pornography in violation of Title 18, United States Code, Section 2251(d) and (e), such that:

    a. the Defendant knowingly made, printed, or published, or caused to be made, printed, and published, a notice or advertisement seeking or offering;

    b. to produce, display, distribute, or reproduce any visual depiction involving the use of a minor engaged in sexually explicit conduct, and the visual depiction is of such conduct; and

    c. the Defendant knows or has reason to know that the notice or advertisement would be transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer or mailed; or

    d. such notice or advertisement was transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer or mailed.

8. Based on these facts and other information known to the parties, STEWART also agrees that, had this case gone to trial, the government would have proven beyond a reasonable doubt, as to Count 3 of the Indictment, that STEWART conspired to distribute child pornography

in violation of Title 18, United States Code, Section 2252A(a)(2) and (b)(1), beginning in or around October 2020 and continuing through on or about November 14, 2022, such that:

   a. two or more persons in some way agreed to try to accomplish a shared and unlawful plan;

   b. the Defendant knew the unlawful purpose of the plan and willfully joined in it.

And that the unlawful purpose of the plan was to commit the offense of distributing child pornography in violation of Title 18, United States Code, Section 2252A(a)(2) and (b)(1), such that:

   a. the Defendant knowingly distributed an item or items of child pornography;

   b. the item or items of child pornography had been distributed using any means or facility of interstate or foreign commerce or had been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; and

   c. when the Defendant distributed the items, the Defendant believed the items were or contained child pornography.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 1/19/24        By: _____ For
                          GREGORY SCHILLER
                          ASSISTANT UNITED STATES ATTORNEY

Date: 1/19/24        By: _____
                          KYLE REYNOLDS
                          WILLIAM CLAYMAN
                          TRIAL ATTORNEY'S, U.S. DEP'T OF JUSTICE

Date: 1-19-2024      By: _____
                          RICHARD FRANCIS DELLA FERRA
                          ATTORNEY FOR DEFENDANT

Date: 1-19-2024      By: _____
                          JOSEPH ROBERT STEWART
                          DEFENDANT