UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cr-80162-AMC

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSEPH ROBERT STEWART

    Defendant.

_____/

**DEFENDANT JOSEPH ROBERT STEWART'S
SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE**

Defendant, JOSEPH ROBERT STEWART, through his undersigned court-appointed counsel, hereby files this Sentencing Memorandum and Request for Downward Variance and as grounds therefor states:

18 U.S.C. § 3553(a) which instructs that a criminal sentence "be sufficient, but not greater than necessary" to achieve the goals set forth in section 3553(a) includes the principle of mercy as expressed by Judge Jack Weinstein of United States District Court for Eastern District of New York who wrote:

> Mercy is seldom included on the list of "traditional" rationales for sentencing. It is, however, evinced by the federal sentencing statute, 18 U.S.C. §3553(a), which provides,…that the lowest possible penalty consistent with the goals of sentencing be imposed. *See also United States v. Johnson*, 964 F.2d 124, 125 (2d Cir. 1992) ("the United States Sentencing Guidelines do not require a judge to leave compassion and common sense at the door to the courtroom"). The notion that undue harshness should be avoided by those sitting in judgment has long been a part of the human fabric and spirit. Lenity is often the desirable route.

*United States v. Blarek*, 7 F.Supp.2d 192, 210 (E.D.N.Y. 1998).

In this case, the Defendant's guideline range is 292 to 365 months. By this filing, Defendant asks the Court to consider a downward variance.

**Defendant's history and characteristics**

Other than the offense conduct, Defendant has lived the life of an average, law-abiding citizen. He has no criminal history. He was raised in a normal household with a strict father, a loving mother and two brothers. He was bullied in school which drove him to introversion.

Defendant has two children aged 18 and 15 with his wife, Rebecca. Defendant and his wife are now separated as a result of the charges against Defendant in this case. Prior to his arrest, the family lived in a modest home in Milton, Washington.

Defendant graduated high school in Washington and went on to obtain a Bachelor of Science degree in network communications. He held a job as a network administrator for Globe Machine Manufacturing Company in Tacoma, Washington for 20 years prior to his arrest in this case. His employer related that in the Presentence Report that Defendant's work performance was above and beyond expectations.

Submitted with this filing as Exhibit A are character letters written in support of Defendant:

- Robin Stewart, Defendant's father, states that his son is caring and empathetic. Defendant is the primary provider for his family. Defendant also cared from his mother during her final weeks and acted as a caregiver for his aging father.
- Sean Stewart, Defendant's brother, states that Defendant is an extremely positive person who puts aside his own needs to provide for others. Defendant has always been generous with his time. He is a dedicated brother, husband, father, son and community volunteer.

- Kendra Spaulding, longtime friend and co-worker, describes Defendant has fair, hones. Loyal and dedicated. She has never known him to cause intentional harm to anyone. He goes above and beyond, he's very patient and supportive. She has always found defendant to be one of the most honest and straight-laced guys she ever met. She has never known defendant to be the kind of person that would harm another.
- Thomas Spaulding, Defendant's work supervisor, considers Defendant a friend and as well as coworker. Defendant is extremely capable and always willing to go beyond the basics. Defendant was well liked and helpful to other employees in the company. He was active in church and in the community.

These people, those who know Mr. Stewart best, speak to his positive qualities and show the Court the man beyond the defendant charged in this case.  It is hoped that Defendant's background and lack of prior criminal behavior will serve as a basis for the Court to vary below the guideline range at sentencing.

### Defendant's acceptance of responsibility

It should be noted that Defendant made a detailed post-arrest statement to the agents.   He admitted that he was Voyeur Zoe on Website A.   He admitted that he had access to the "Library" and that he monitored it and cleaned out dead links. In sum, he made no pretense of innocence. Further, as evidenced by his guilty plea and the factual proffer he signed, he has accepted full responsibility for his conduct.

### Defendant's physical health condition

As the Presentence Report notes at paragraph 147, Defendant has suffered from Type I diabetes since 1992.  While in custody, Defendant has received sporadic medical treatment for his diabetes.  Failure to properly treat type I diabetes can lead to death.  It is submitted that the

Court should consider this in fashioning an appropriate sentence.

According to the American Diabetes Foundation, type 1 diabetes, is an endocrine system disorder. Without regular and appropriate insulin administration, a person with diabetes will reach dangerously high blood glucose (blood sugar) levels. At severely high blood glucose levels, diabetic ketoacidosis (DKA) will cause acid to form in the blood. This can lead to fatigue, vomiting, blurred vision, and changes of consciousness. For a person with type 1 diabetes, failure to provide insulin for a sustained period of time will almost always be fatal.

Low blood glucose (hypoglycemia) also requires prompt treatment. Hypoglycemia can lead to shaking, changes of behavior, and unconsciousness. Extremely severe hypoglycemia can lead to convulsions and may be fatal.   Care for type 1 diabetes is a balancing act between too high and too low blood glucose levels.

Type 1 diabetes is different from type 2 diabetes. A person with type 2 diabetes requires insulin in some but not all cases. A person with type 1 diabetes must have access to insulin administration every day. Without regular insulin administration, they can suffer severe symptoms requiring hospitalization, causing brain damage and ultimately death, within a short period of time.

Below are some important aspects of diabetes care for type 1 diabetes:

1. **Blood glucose checks:** A person with type 1 diabetes entering detention must have their blood glucose level checked as soon as possible, and regularly throughout detention. If blood glucose is high, corrective insulin must be administered as soon as possible to avoid severe health consequences. If it is too low, the person must have immediate access to glucose tablets or other glucose (sugar)-containing foods and beverages, such as non-diet soda, hard candies, etc. Hypoglycemia can generally be treated with oral carbohydrates. Glucagon or glucose for intravenous (in the veins) infusion should be readily available to treat severe hypoglycemia (i.e., if the person is unconscious).

   Allow people who used a continuous glucose monitor (CGM) before incarceration to continue to use it in custody and allow other people with

    diabetes to use a CGM if it's beneficial to achieving their blood glucose targets.

2. **Insulin administration:** There are many methods of insulin administration available, and it is important that each person with type 1 diabetes receive insulin in a manner that allows them to successfully manage their diabetes.

   Many people use a combination of long-acting and short-acting insulin taken by injection. Long-acting insulin must be supplemented with additional insulin dosages. A person with type 1 diabetes will suffer severe health consequences from high blood glucose, including blindness, nerve damage, and heart problems if only long-acting insulin is provided.

   Many people also use insulin pumps. Insulin pump therapy should be considered as an option for people with type 1 diabetes who are able to safely manage the device.

3. **Food:** Consumption of food raises blood glucose levels. Insulin administration lowers it. If insulin is administered to cover for food intake, the person with type 1 diabetes must eat in a timely manner. For example, the failure to eat timely after administration of insulin will lead to dangerous hypoglycemia (low blood glucose).

4. **Behavior:** Very high or low blood glucose levels can lead to changes in behavior. Many of these symptoms can be confused with intoxication or mental illness. Symptoms can include slurred speech, loss of motor control, confusion, and irrational aggression.

As stated above, the medical treatment offered to Defendant while in custody has been sporadic, at best. When defendant was first taken in the custody in August of last year, defendant was experiencing a hypo's glycemic episode. A meal was brought to him by an officer who directed defendant to retrieve it through the door slot. Defendant was unable to retrieve the meal due to the episode upon which the officer threatened to remove the meal if he did not retrieve it. Defendant willed himself out of bed, injuring his shoulder in the process, knowing the meal was his only means to recover from the episode or face coma/death. This instance demonstrates a institutional indifference to defendants serious medical condition.

When defendant was transferred to the Tallahassee Federal Detention Center he was hospitalized for severe hypoglycemia. He was returned back to his cell with blood sugar level still below normal. The next day he had another critical episode which was ignored by the facility staff. It was a fellow inmate who persistently wailed and knocked on the door until a facility member answered. Defendant was eventually transferred to the West Palm Beach jail. He was initially informed that no insulin was available for his diabetes. Defendant had to fight to receive his insulin prior to court that day. In fact, it has been a constant battle for defendant to receive insulin while in custody. It is feared that his time in custody will be marred by episodes such as these, at best.

**Conclusion**

Defendant expects this Court to mete out a severe sentence in this case. The guideline range assessed by probation is 292 to 365 months. The minimum mandatory sentence for Count 2 is 15 years. Defendant only prays that this Court will grant a variance in this case and impose a sentence that is below the advisory guideline range.

WHEREFORE, Defendant JOSEPH ROBERT STEWART, respectfully requests that this Honorable Court grant a continuance of trial and to grant any other relief that this Court deems just and proper.

Respectfully submitted,

RICHARD F. DELLA FERA, P.A.
500 East Broward Blvd., Suite 1710
Fort Lauderdale, FL 33394
Telephone:   (954) 848-2872
Facsimile:   (954) 848-2873
Email: rdf@rdfattorney.com
       admin@rdfattorney.com

By: /s/ Richard F. Della Fera
    RICHARD F. DELLA FERA
    Fl. Bar No. 66710
    *Counsel for Joseph Robert Stewart*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on April 11, 2024, I electronically filed the foregoing document with the Clerk of Court using CM ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the service list below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing:

By: */s/ Richard F. Della Fera*
RICHARD F. DELLA FERA